Good morning. We have a few cases on calendar that are being submitted on the briefs. Those are 21-70850 Marvin Coronado Godinez Perez, 22-1167 Gregorio Gonzales Nepomuceno, and 22-1849 Elias Ayala Luriano. In accordance with the respective orders previously entered on the dockets of those cases, those three cases are hereby submitted for decision on the briefs. We'll proceed to hear argument in the first case on calendar for argument this morning, and that is 24-6690 Carrington Mortgage Services, LLC v. Silverado Place Homeowners Association in Saticoy Bay, LLC. And we will hear first from Mr. Belay. You may proceed. Thank you. Good morning, Your Honors, and may it please the Court, Nicholas Belay for Carrington Mortgage Services, LLC. Your Honors, we're here today on another one of these many HOA Nevada cases that have been permeating through the system for the better part of a decade plus now. I know Your Honors are familiar with these cases. This one's a bit of an outlier in that we have a tender futility case involving the trustee Leach Johnson, where the district judge found that there was not a known policy of tender rejection in the year 2012 around that area. This decision stands in stark contrast to both prior decisions and a recent decision that came after both in the Ninth Circuit and in the Nevada Supreme Court. And so the question is, how did the district court arrive at this? Well, I mean, one of the issues that comes out of the Nevada Supreme Court, I mean, you look at the three decisions that they issued in the L.N. Management versus Penny Mac case and, you know, one of them goes off on one grounds. It goes back, comes back to summary judgment. No, no summary judgment comes back up. And then under deferential standards, based on the evidence in the record, it sustains the judgment. But what the takeaway seems from these Nevada Supreme Court decisions is that this is not sort of a class wide all or nothing issue. It's a question, even though it has certain common features across cases, that is to be decided under the appropriate standards of review, deferential or non-deferential, whether it's summary judgment, et cetera, based on the specifics of the record. And indeed, in in its decision, it distinguishes prior decisions. Well, that had different evidence and different posture. So why isn't this just a question of this specific record looking at it under deferential standards? I think that's exactly the crux of the issue in this case. Your Honor, it's what can we pull from these other decisions that would be applicable here? But do you agree that the inquiry under Nevada law that we have to look at is whether under the deferential standards that we apply to the findings of fact of the district court, that this particular record establishes that the district court clearly erred? I would not agree with that, Your Honor, for a simple reason, which is that essentially there is material evidence in these futility cases and there's immaterial evidence. Even though there is a deferential record, we do know from these other cases, such as the via frenzy case, which I was counseling, Your Honor, so I am intimately familiar with the record in that case. And we do know that there's certain issues that do not affect the tender analysis, the futility tender. It seems to me you're raising two arguments, if you will. And that is why I'm interested in Judge Collins's question. One is that on this record, nobody could find anything but futility that the district judge erred. And whether it's clear error or standard review or deferential in some way. The other argument you're raising is a issue preclusion argument. Correct, Your Honor. How do we review the judge's ruling on issue preclusion? Do we review that deferentially or do we review that as a matter of law? The application, the availability of issue preclusion would be as a matter of law, de novo. Whether the district judge applied it in this case, assuming he had, then that would be abuse of discretion. Well, as I read the order of the district judge in this case, he rejects your issue preclusion argument because he thinks that Nevada law requires a larger measure of privity than was present in this case. And he doesn't seem to be mentioning the Mendenhall case, which is only a few years before, where the Nevada Supreme Court said we've now departed from strict measures of privity and we will address this more loosely in the future. So I'm trying to figure out whether under the application of that case, issue preclusion is required to be approved as a matter of law or whether or not it's a discretionary application. Well, certainly, Your Honor, in this case, the district judge applied the incorrect standard. Right. And so we could we could simply say, go back and apply the correct standard. But I'm trying to figure out is whether or not if we did that, we'd be saying to the judge and the correct standard requires that you find issue preclusion or that go apply the correct standard. And we'll see what you come up with next time. I think this court would certainly be within its rights to find issue preclusion on appeal. It perhaps would be a cleaner record to remand for the district court to apply the correct standard. But I do believe the court to go either way on that on the issue of collusion issue. Of course, under the modern approach, you're looking at whether there's a commonality of interest. The district court did not analyze. And there's clearly, you know, short of entities being identical. It's hard to fathom more commonality of interest between entities. In these two cases, you have one. Well, in both cases, they're single single asset LLC. So they own the property and nothing else. They're Eddie Haddad properties. He's a prolific real estate investor in Nevada. He purchases hundreds of these properties. He testified in the via frenzy case that he had managerial control over management. And he's the sole principal in this case over statically. So under the more modern approach. But even if you have privity, I mean, I guess where is one of the directions I was going with with my question is, do you have the same issue? Because if the issue is a fact bound determination of an application of standards to a particular record, and different cases have different records, it's it's not the same issue when there's no preclusion. Well, I'd like to clarify that point. The trial standard is different. So the medicine court has recognized that if you're going to resolve something on summary judgment, you know, it's going to be a very different standard than trial. But the medicine court has not come out and said that these are individualized cases. What we're ultimately discussing is whether a trustee has a known policy of rejection. It's it's quasi legal in nature because it's a legal fallacy to say that there's a known policy of rejection in one circumstance, but not that same knows known policy of rejection in another. And on that point, I think it's important. But I'm looking at, like, the second decision in the via forensic case, and they have this footnote where they distinguish the Thomas Jessup case. And they said, since our ultimate disposition of Thomas Jessup, we have recognized that the response letter at issue in that case is not necessarily insufficient to satisfy Perla's known policy of rejection standard, depending on what other evidence and testimony is presented in a particular case. So they seem to be saying this turns on particular records and you could have the common issue. It's a combination of a certain level come out differently if it's different records. Your Honor, the original Jessup standard was that the singular letter alone could prove futility. Perla changed the rule. And so what they're commenting on there is that the actual rule is different. So under Perla, it has to be a known policy of rejection. And if I may briefly ask before you leave that, can it be a known policy of counsel for the H.O.A. of rejection? This is a this is a little bit of a strange case. We know the H.O.A.'s counsel recommended rejection every time. We know every H.O.A. that he recommended rejection to rejected the tenure. But this seems to be a one off case. In other words, we don't have a record of of this H.O.A. rejecting lots of tenures. Silverado H.O.A. So is it is it the known policy of can we intuit the known policy or could a judge find, as a matter of fact, that there's a known policy because counsel it's the same lawyer in every case. They make the same recommendation and the client follows the recommendation in every case. Yes, we can, Your Honor. And I would like to tie it back to this idea that there's different records and cases. It doesn't mean that we can't draw information as to what is pertinent to the futility analysis. So, for example, in the frenzy, this partial payment issue was brought up extensively. The same partial payment issue predominantly argued here, which is that Lee Johnson says at the end of their letter, OK, well, we'll accept a partial payment and apply it to the past due balance. That was argued actually even more so in the frenzy. There is a motion for new trial on that exact basis for the district judge to reconsider testimony on that. And it was briefed on appeal as well. And what the Nevada Supreme Court said to that point is not only is it not relevant, but the language they used is it's actually consistent with the district court's finding of a known policy of rejection. So, yes, we're looking at different evidential. But I want to go back to the question I asked you in frenzy. And all I can tell us from reading the things in the record was there was there a record that the H.O.A. had repeatedly rejected tenders or was it simply that it had rejected the tender in this case? So exactly not. There was no record of that, Your Honor. And to tie it back. Well, there was there was a record that there was a record in that case that they obviously they'd have accepted the tender. We wouldn't have been there. So so they did reject at least one tender in that case. I'm trying to figure out whether the record in that case is that they rejected tenders in other cases, too, or whether it was just the court reached its conclusion based solely on the one rejection and the policy. Your Honor, it was not based on the H.O.A.'s. No, I understand. It's the it's counsel's. But exactly. And that case does establish it can be counsel's policy. And what I'm trying to figure out was that extended beyond that particular one instance in that case or whether it extended to others. So the exact same H.O.A. argument was actually raised in a frenzy as well. It was argued at the district level and then briefed on appeal in substantially, probably very similar language as to how it was argued in this appeal. These are very much mere image cases. So let me just be clear, because I want to understand the record. In forensic, the evidence was that counsel had a known policy, a counsel had a known policy of rejection, and it recommended that to its clients and its clients routinely followed it. That's the record in this case, too. I want to focus on the H.O.A. and friends and the H.O.A. here. Was there any evidence that either of the H.O.A.'s had known policies or was it relevant at all? It was not relevant, Your Honor. And we know that because of the frenzy decision. The Nevada Supreme Court says at the end that the other arguments argued on appeal have no bearing on the district court's finding of futility. One of those arguments was precisely that, that there wasn't evidence of what that specific H.O.A. would have done with Lee Johnson's recommendation. In fact, across all futility cases, hundreds, I do not know of a single one that has focused on the H.O.A.'s individualized. Well, to be fair to the other side, until the Nevada Supreme Court made clear the tender of the nine months dues was sufficient, it probably would have been malpractice to advise your client to take the tender because then they were blowing their chance about stealing the whole house. Right. Sure. Yeah. And I understand. I understand why the advice was being given that way, given the state of the law at the time. And ultimately, while Lee Johnson is a law firm, these were the collection agents for the H.O.A. So they had delegated authority to deal with these matters. Didn't they routinely deal with this issue, the one at issue in this case? Not to my knowledge, Your Honor. The H.O.A.'s were more one off and the trustees for the H.O.A.'s, there's only a handful. So it's the same trustees for a plethora of H.O.A.'s. And I think that really highlights another point, which is that if you delve too deep into this notion that you have to look at the individualized H.O.A.'s policy, you would essentially swallow the entire Perla rule because it's about a known policy of rejection. And these H.O.A.'s were not front facing to the banks. They were not discussing matters with the banks. It was always through these four trustees. Well, Forensic at least treats the think of the name, right? Treats the law firm's policy as their own policy of rejection of the agent's policy, not the individual's H.O.A.'s policy, correct? Precisely. And so, too, should the district judge have have done that here. And so that's one of the red herrings that we identify in our brief, this H.O.A. argument, along with the partial payment argument. And one of the other arguments that I'd like to point to, Your Honors, is this idea that there was a policy change at some point where Lee Johnson began accepting tenders. And because Brock Young was not certain as to when this policy change happened, the district judge found that it was unclear whether there would have been a futile tender at this point in time in 2012. This is based on a misstatement of the record. We go into this in the briefing. It appears to be conflation of cases that were going on at the same time and decided at the same time. It was actually a lessee, a different trustee entirely, that changed its policy in 2014 to begin accepting. Lee Johnson never did. And that's consistent with the testimony of Brock Young. He testified that his entire time at Miles Bauer, Lee Johnson never accepted a tender check. And that goes all the way up until 2014. So two years after the relevant period here. Do you want to save some time for rebuttal? I would, Your Honor. Thank you. OK. All right. Thank you. I will hear from Mr. Coteau. Thank you. Sorry. You may proceed. Morning, Chief Justice, Justices. My name is Roger Coteau. May it please the court. I'm here representing the appellee, Sadakoid Bay. I've been involved in these cases for many, many, many, many years myself. So have we. I'm sorry. So have we all. I understand. You know, and what this would be is, I think, uniquely, right, this house sold on 9-15 of 2014. The SFR decision came out on 9-18 of 2014. And shortly thereafter, all this litigation ensues as to what is potential tender. Right. At that time, this first letter was deemed to be no tender at all. Right. It's not a payment for immediate money for some certain or some condition that's met and it's paid. I don't think anybody's contending that the letter qualifies as tender. The question is whether there's an obstruction or futility. Respectfully, I understand that. I guess I was getting to is this. In this particular case, the testimony is from Rock Young. They never sent a check till 2013. The first check allegedly, at least pursuant to the record in the testimony in the case, is the first check that was sent by. I don't understand the issue to be whether they sent a check. It's whether or not the Perla standard is met, whether there was a policy, a known policy of rejection. Understood. Why don't you address that question? Absolutely. The point is, how do you know you have rejection until you send the check? Well, I mean, I must say as a non-Nevada lawyer not dealing with the statute, when I look at this record, they send you a letter that says, we'd like to tender all the dues that are owed. Please tell us how much they are and we'll send you a check. And you've sent back a letter that says, don't even bother. We can't tell you what amount is owed until after foreclosure, and even then we'll only accept attorney's fees and costs in addition. I don't know whether Perla says that's futility or not, but in real world terms, it's hard to see why they weren't told, don't bother. Well, but that's actually not the full story, right? They sent a letter that says, we'll pay a sum certain if you tell us. Tell us how much you're owed. Correct. And you said, tell you what, we can't tell you how much we're owed until after foreclosure, at which point, of course, the tender would be futile. Second, the amount we're owed will include attorney's fees and costs. At the time, that may have been an open issue, but it turns out to be wrong. And so now you're saying, but they nonetheless should have sent us a check at an amount that we had told them in advance we would not accept. I mean, that's really your position, isn't it? No, it's not. And here's where I'm getting at. In this particular case, the notice of delinquent assessment lien put the amount of the monthly assessments in the actual recorded document that was filed. No, they could have found that out. I understand. But you also made it clear, your side made it clear in the response letter, that we will not accept that amount in order to discharge the super priority lien because, A, we can't tell you how much the amount required to discharge the lien is until after foreclosure, and, B, it will in any event include attorney's fees and costs. So I'm trying to figure out, are we exalting form over substance here? They should have sent you a check that you told them in advance you would have rejected? It doesn't say that. If you look at the record and where it is. I've got the letter in front of me. Tell me where it doesn't say that. Your Honor, I'm looking at the Leach-Johnson letter. Yeah. Dated September 27th of 2012. And I draw the Court's attention to ER 0467. It's basically the second to last paragraph. It says, based on the foregoing, the association rejects the proposition taken by BAC. If your client wants to make a partial payment to the association, the association will apply it to the owner's past account. See, you said, we'll take any money you want to send us, but we won't discharge the lien. That will only be a partial payment against the amount owed. So what you're saying is that they nonetheless, in order to try to discharge the lien, should have sent you what you had determined to be a partial payment. I don't think so. I think the issue is this. If you want to parse it, what they would have done and what the effect of this would have been is they're never going to discharge their lien unless they're fully satisfied. Obviously, that makes sense, right? So all they're trying to do is preserve their first deed of trust not being extinguished because of the payment. Well, they're going to discharge the super priority part of the lien. Which is the nine months. Right. And what I mean by that is if they don't discharge that, then their lien is subject to – Their lien gets destroyed. Understood. So they're never going to discharge the entire lien. That's a factual statement. If the HOA – I'm sorry, if BANA at the time was simply looking to satisfy the super priority lien, you're never going to discharge the ultimate lien. The ultimate lien is going to stand though through the foreclosure. I think we're talking past each other here. What they wanted to do was preserve their first deed of trust. And they wanted to discharge the super priority portion of the lien. And they said, we'd like to send you the amount of dues that are owed. Perhaps they could have found that on its own, put that aside, on their own. And you said, anything you send us we'll only treat as a partial payment. You can't discharge the lien, the super priority lien, unless you pay our attorneys' fees and costs. And we won't know what they are until later. I don't see how this letter is readable any other way. Well, I mean, I think it's relevant a little bit here is that BANA had it right. I mean, if we want to talk about the first letters, and there's not a second letter in this case, but I'm sure you've all seen them. But in this case, BANA had it right. I mean, Bank of America came at it and understood the law as ultimately was adopted by an SFR, right, the SFR decision. So, I mean, what they're saying is we want to satisfy our super priority lien, not the total lien, super priority lien. What this letter says, they're not discharging the lien. They don't identify whether it's super priority or not super priority. But BANA knew they needed to pay nine months, all right? They needed to do that to secure their, let's call it deed of trust, make sure that it wasn't extinguished, and that they had sent enough money to at least satisfy the nine months. We know for a fact, based upon all the case law that was going on at the time, right, that it was articulated what that number would have been or not been. There was some dispute. Stop for a second, because isn't your letter, your letter, your side's letter, make it absolutely clear that they would not accept a nine-month tender as discharging the super priority lien? I mean, I can't read that letter any other way. And it may have reflected what your belief was in the law at the time, but I can't read that letter any other way except to say, you know, you can send us whatever you want, but we won't know how much you have to send us to discharge the super priority lien until later on, and that will include attorney's fees and costs. Your Honor, I absolutely agree with what you're saying in terms of what Leach Johnson was saying. But in order, from BANA's perspective, they knew what they needed to pay. At least they assumed they did, and they articulated it. Well, they took the correct position, and your side rejected it. Well, I don't know if it's my side. Your side. We're not related to them at all. I meant your client. Your client rejected it. No, my client didn't reject it. Well, your client did reject it because a letter came from its agent that said we won't take it. No, no, no. I represent the buyer of the property. I understand. But he stands in the shoes of the HOA. Yeah, in this case, yes. All I'm getting at is I don't disagree with the court in what you're saying. I'm just saying that the upshot of this is had they tendered, this would be a different case. We wouldn't be here. There wouldn't be a futility problem. There never would be a futility problem. No, everybody agrees they didn't tender. The question is whether we have a futility case. I want to get back to collateral estoppel in a second. But as to futility, what you're saying is they should have sent us the nine months anyway because the mere fact that we told them that we wouldn't treat it as a tender isn't enough. Isn't enough to make the tender futile. Correct. And that is your position. The other aspect of this, though, and we need to consider is these tender letters didn't even begin until about 2011. And the question is, there's no record in this case as to how many they sent. What does the record show about how many times Leach-Johnson has accepted a tender? Does the record speak to that? The record is substantially dearth at this point. And, again, I go back to my comment. Was there any evidence in the record that Leach-Johnson ever accepted a tender? Not from the testimony, but there's also. How is that not a practice of not accepting tenders? Because they didn't send one. Well, you keep saying they need to send a check. They don't need to send a check. If they sent a tender, we'd have an actual tender case. We wouldn't have heard about futility. Right. But we already get the futility when sending checks demonstrates it's futile to provide a check. I mean, if you want to go back to. So you're saying that they can't show futility unless they actually send a check. Even if.  But somebody may have a policy that, you know, they're never going to. Can't be satisfied. Absolutely. Now, if we had that evidence in this case, it would be different. Isn't that what LaPerla rejects? In other words, if you sent the check, you've made an actual honest-to-God tender. Agreed. But LaPerla says something more. It says there can be a futility. There can be obstruction. And if it would be futile to send the check, then we're going to excuse you from not having actually tendered. But Perla Del Mar says there has to be a rejection policy. And it has to be. That's what Judge Collins was asking you. Why isn't the policy of the collection agent and the attorney for the HOAs who never would accept a tender and always took the position that you've got to send us more than nine months sufficient to establish a policy of rejection? You have to get to. And it's sort of like the chicken-and-the-egg argument. You have to get to evidence of a rejection policy. In this particular case, the judge found none. I understand he found none. No. The question is whether or not that finding is completely contrary to the record, when the record seems to indicate that Leach Johnson never would accept nine months' worth of dues as a tender and made that position clear to everybody, including the plaintiffs in this case. And so I understand the judge made a finding, and we review that deferentially. But it seems to me the record is quite to the contrary, is it not? You know, some of the other cases that were cited dealt with NAS and absolute collection services who had actual policies in the records in those cases to not accept checks and ultimately changed that policy as case law was developing. There is no such evidence as it relates to Leach Johnson in this case. Well, there's evidence. It may not be the same evidence. There's evidence the attorney for the plaintiffs in this case said, I've asked them a thousand times to accept nine months' worth of dues, and they've told me they sent the same letter back every time. I asked them in this case, and they sent the same letter back. I think that's evidence from which a policy could be found, is it not? So what would one have to do to, in your view, to complete the transaction? A willingness to pay all past HOA dues and then sign a promissory note agreeing to pay attorneys' fees, interest, and cost in whatever amount may be owed? Would that constitute a complete tender? Probably would. It's an obligation to pay. It's current, and you converted it to debt. But I don't think that's the approach. Would any sensible real estate person do that?  But I think the approach is very simple. I think the approach would have been, look, it's beyond the record, but every bank has all the HOA information and so forth. I mean, finding out what the number is is not difficult, and simply sending the money. And send the basic dollars that you believe is the number. You have a tender case at that point. Would you say anything about any instances in which Leach Johnson was sent to check and what they did? The problem, Your Honor, is we don't have that evidence. It wasn't developed by us, and we don't bear the burden of proof. So the answer is there's nothing in the record on it? There is nothing in the record that suggests or knows for a fact, because Mr. Young had no specific memory, neither did Mr. Leach, of this particular transaction. Mr. Young testified. Well, but since we're looking at practice and policy, I'm just wondering, was there any about other transactions where somebody said, well, you know, yes, we got a check once and we did take it? I don't have that evidence in the record, Your Honor. I know you've only got a minute left, but I want to ask you a question. I think it's a yes or no question. If it's not, you can tell me. No, it's fine. On issue preclusion, is your only argument for its non-application that there's no privity? Essentially, we were dealing with different HOAs, which I think that means non-privity, right? Well, I think it means not privity. I think it's different facts of a case. And I think the argument in this case is you have the affidavits of count of the various parties. And those are at E.R. 159, 160, 161. Do you agree that it's the same issue across all the cases? And so what I was reading from the Nevada case, this is wrong. You concede that? I'm not sure. I disagree that it's the same across all cases. And because it should be some sort of facts and circumstances case to see whether or not. I mean, it does sound like a common question because policy or practice necessarily means across cases. So it's weird to have it be, you know, one judge goes this way and another judge goes the other way. And it seems chaotic and arbitrary. Doesn't it seem unfair, though, at some level? Because in this particular case, the judge adduces the appropriate evidence. And instead of blanketing it with a definitive, it's a rejection policy, finds in favor of my client and acquires title. Whereas if you impose the rejection policy, he loses. But in forensic, on the exact same evidence, perhaps not the same parties. Not the same parties, not the same. Perhaps not the same parties. Maybe they're in privity. Maybe they're not. The judge finds precisely the opposite. The judge finds at least Johnson has a known rejection policy. Difficulty is timing. And, again, I know your honors have been involved in this and so have I. This has been a generational sort of thing as the cases have gone through the system. Kept you all busy. That is fact, sir. But the difference is, you know, when it was started, it was unclear. And whether they were accepting checks or not accepting checks, there were checks being sent. Whether they were cashed or not, whether they were deposited or returned, it was still determined to tender. This futility argument came up to save, if you will, the entities who never sent a check, did a first letter. So they developed futility arguments, which didn't develop until like 2014, 2013 at that time. So in this particular case, what is futility, actually? You know, it's like did you attempt to – did you develop a history with this particular HOA? Did they reject everything? As far as whether or not they ever accepted a payment, I don't have the record for that. All we have is Mr. Young saying, I don't remember them ever collecting a payment. Well, we know when they collected payments after 2014, don't we? I mean, once the decision came out, they were all paying. So everybody was taking payments at that point in time. So it just depends. And I apologize. All right. Thank you, counsel. We'll hear the rebuttal now. Can you answer the same question I had about what the record shows about whether or not any payments were sent across cases to Leach-Johnson and they ever accepted them? The only evidence in this record, Your Honor, is Rock Young's testimony that in his experience across thousands of these cases, Leach-Johnson never accepted a tender check. There was a Leach-Johnson witness in this case, was there not? In other words, there was a declaration. John Leach testified on behalf of Leach-Johnson?  It didn't say we've ever accepted. I'm asking Judge Collins' question a little bit differently. Nobody from Leach-Jones ever said, oh, yeah, at least before the law changed, we accepted a tender. I believe that his testimony was that he doesn't recollect returning tenders. That's right. Okay. So it's kind of a circuitous way to answer the question, I think. But there's no direct evidence of any sort that Leach-Johnson ever actually accepted a tender check. But there's no evidence that they received a check and sent it back. So it's kind of the record is silent on what happened with checks sent to Leach-Johnson. Rock Young did testify that they would send tender checks once Leach-Johnson changed their policy to provide the account information. This occurred around 2013. And the tender checks were still rejected then. And so what one can extrapolate from that is that even when Leach-Johnson softened their position and said, okay, maybe you are entitled to this account information, they still maintained that they would not accept tender checks. And so when they had a stronger policy back in 2012 of not even providing this account information, the necessary implication, to borrow from the language of the Wachovia case, is that they would have rejected tender checks. And on that topic, Your Honor, Wachovia found that the letter alone was sufficient to find that the necessary implication was that they would reject tender checks. Obviously, the New Medicine Court in Via Friends walked that back somewhat on the summary judgment standard because they said, well, that's not a categorical rule. It was argued differently in that case. But the principle behind it still stands, which is anyone can look at this case and see that Leach-Johnson did not believe this super priority lien existed until after the deed of trust beneficiary foreclosed. And so if they did not believe that a lien existed, they certainly would not have accepted a tender check expressly conditioned, as the banks were allowed to do, on satisfying that lien. The final point I would like to make, Your Honor, is that I believe I'm out of time. We took your opponent over, so you can answer this one point. Thank you, Your Honor. On the privity point, only the privity aspect was argued below, and so it would be waived. Any other issues on appeal? All right. Thank you, counsel. The case just argued will be submitted.
judges: HAWKINS, HURWITZ, COLLINS